UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Veronica Ortega-Maldonado, as
assignee of the claims of Maria
Guitterrez and Genoveva
Manzanarez,

Plaintiff,

vs.

Allstate Insurance Company,

Defendant.                    Civ. No. 06-461 (PJS/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I. Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a special assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the parties' cross-Motions for Summary Judgment. At

the time of the Hearing, the Plaintiff appeared by Neil G. Clemmer, Esq., and the

Defendant appeared by Kevin J. Rodlund, Esq. For reasons which follow, we

recommend that the Defendant's Motion for Summary Judgment be granted, and the Plaintiff's Motion for Summary Judgment be denied.

## II.  Factual and Procedural Background

This case arises out of an automobile accident, on March 11, 2001, that occurred in Minneapolis, Minnesota, and that involved the Plaintiff Veronica Ortega-Maldonado, and Maria Guitterrez ("Guitterrez"), in which neither party admitted fault. At the time of the accident, Guitterrez was driving a car that belonged to her mother, Genoveva Manzanarez ("Manzanarez"), and that was insured by the Allstate Insurance Company ("Allstate").  See, Affidavit of Kevin J. Rodlund, Docket No. 45, Exhibit A, at ¶II, and Exhibit J.  Guitterrez and Manzanarez (collectively, the "Insureds") contacted Allstate, within several days of the accident, to make a claim for benefits, and Allstate made no-fault benefit payments for chiropractic treatments, that were provided to Guitterrez, until November of 2001.  See, Affidavit of Gary L. Manka, Docket No. 66, Exhibit B, at pages 17-19.

On September 27, 2001, Allstate received a request for subrogation from the Plaintiff's insurer, American Family.  See, Affidavit of Rodlund, supra at Exhibit B, p. 23.  Allstate conducted an investigation of the accident and, on April 12, 2002, sent

correspondence to the Plaintiff's attorney denying liability, and to American Family denying the subrogation claim. <u>Id.</u>

The Plaintiff subsequently initiated a State Court action against the Insureds for damages arising from the accident, and alleges that, on May 12, 2003, she served a copy of the Summons and Complaint on the Insureds and, on that same date, also mailed a copy of the Summons and Complaint to Allstate. See, <u>Affidavit of Rodlund</u>, supra at Exhibit A. Prior to Trial, the State Court sent the matter to non-binding arbitration, and the Plaintiff alleges that, on December 3, 2003, she mailed a letter to Allstate that provided notice of the Arbitration Hearing which occurred on December 11, 2003. See, <u>Complaint</u>, <u>Docket No. 1</u>, at p. 4, ¶IX; <u>Affidavit of Rodlund</u>, supra at Exhibit H. Neither Allstate, nor the Insureds, appeared at that Arbitration Hearing, which resulted in an award against the Insureds for $105,000.00. See, <u>Complaint</u>, supra at ¶X; <u>Affidavit of Rodlund</u>, supra at Exhibit I.

The Plaintiff alleges that, on March 16, 2004, she mailed a copy of the original Summons and Complaint; Affidavits of Service of the Summons and Complaint on Guitterrez and Manzanarez, that were served on August 12, 2002; the State Court's Order dated December 12, 2003; and the Arbitrator's Award for $105,000.00; to Allstate, but that Allstate did not respond. See, <u>Complaint</u>, supra at p. 5, ¶XI;

Affidavit of Rodlund, supra at Exhibit K.  On August 4, 2004, the Plaintiff allegedly

served Allstate with a Garnishment Summons.  See, Complaint, supra at ¶XII.  When

Allstate also failed to respond to service of the Summons, the Plaintiff brought a

Motion in State Court for leave to commence a supplemental proceeding and, on

September 15, 2004, the Plaintiff filed a Supplemental Complaint with the Trial Court.

See, Affidavit of Rodlund, supra at Exhibit A, at p. 5.  On September 30, 2004, the

Insureds assigned their rights against Allstate to the Plaintiff.  See, Docket No. 1,

Exhibit A.

Allstate made its first appearance in the case on May 17, 2005, by filing an

Answer to the Plaintiff's Complaint.  See, Affidavit of Rodlund, supra at Exhibit A at

page 5.  A Hearing, at which Allstate appeared, was held on May 24, 2005, id. at page

6, and on July 8, 2005, the State Court granted the Plaintiff's Motion for Summary

Judgment, and awarded a Judgment against Allstate in the amount of $30,000.00.  See,

Affidavit of Neil G. Clemmer, Docket No. 54, at Exhibit B.  This left a Judgment

against the Insureds for the $75,000.00, that was in excess of the $30,000.00 liability

limit in their Allstate policy.[1]  Id. at Exhibit J.

_____

[1]The Plaintiff, and Allstate, entered into "settlement negotiations," but no meeting
(continued...)

- 4 -

On January 19, 2006, the Plaintiff, as the assignee of the Insureds, brought a claim in State Court alleging Counts of negligence, breach of contract, bad faith, and breach of duty to defend against Allstate, and alleging that Allstate was liable for the difference between the awarded $30,000.00, and the Judgment of $105,000.00.[2]  See, Docket No. 1.  This action was removed to this Court in February of 2006, and on November 6, 2006, Allstate filed a Motion for Summary Judgment, see, Docket No. 42, and the Plaintiff filed a cross-Motion for Summary Judgment on December 8, 2006.  Docket No. 52.

Allstate argues that Summary Judgment is appropriate for four (4) reasons.  See, Allstate's Memorandum in Support, Docket No. 44.  First, it alleges that the Insureds cannot recover damages, as a result of Allstate's alleged failure to defend, since the

---

[1](...continued)
of minds was reached, and on December 15, 2005, the Trial Court found that the settlement contract that the parties had drafted was unenforceable.  See, Affidavit of Neil G. Clemmer, Docket No. 54, at Exhibit E.

[2]According to the Plaintiff, Allstate has satisfied, in full, the Judgment of July 8, 2005, for $30,000.00, plus post-Judgment interest, and has also satisfied the Judgment against it for the Plaintiff's costs, and disbursements, in the Trial Court action.  See, Plaintiff's Memorandum in Support, Docket No. 53, at p. 8.  Allstate has also partially satisfied the Judgment entered against the Insureds, reflecting the amounts received in respect to the policy limits, and disbursements incurred.  Id. The Plaintiff brings this suit in order to recover the balance of the $85,000.00 that remains due on the Judgment of February 24, 2004, against the Insureds.  Id.

Insureds did not defend themselves before the Trial Court, and therefore, did not incur any attorney's fees, or costs.  Next, Allstate claims that, as a matter of law, it could not be in breach of its duty to consider a reasonable settlement offer, since  there is no evidence, in the Record, that demonstrates that a settlement offer was ever made to Allstate.  Allstate also notes that the Plaintiff has failed to name an expert to testify on the issue of "bad faith," so as to establish her breach of contract claim.  Finally, Allstate alleges that the Plaintiff's entire claim is based on notice letters of questionable authenticity, which do not support her central claim, that Allstate received notice of the Trial Court action, but failed to defend the Insureds.

In turn, the Plaintiff argues that the State Court's decision to grant the Plaintiff's Motion for Summary Judgment should be given preclusive effect under the doctrine of collateral estoppel.  We address each contention seriatim.

### III.  Discussion

A.     Standard of Review.  Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations.  See, Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 711

(8th Cir. 2004), cert. denied, 544 U.S. 977 (2005).  Summary Judgment is appropriate

when we have viewed the facts, and the inferences drawn from those facts, in a light

most favorable to the nonmoving party, and we have found no triable issue.  See, Eide

v. Grey Fox Technical Servs. Corp., 329 F.3d 600, 604 (8th Cir. 2003); Philip v. Ford

Motor Co., 328 F.3d 1020, 1023 (8th Cir. 2003); United Fire & Casualty Co. v.

Garvey, 328 F.3d 411, 413 (8th Cir. 2003).  For these purposes, a disputed fact is

"material" if it must inevitably be resolved and the resolution will determine the

outcome of the case, while a dispute is "genuine" if the evidence is such that a

reasonable Jury could return a Verdict for the nonmoving party.  See, Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);  Planned Parenthood of

Minnesota/South Dakota v. Rounds, 372 F.3d 969, 972 (8th Cir. 1004); Fenney v.

Dakota, Minnesota & Eastern R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003)

As Rule 56(e) makes clear, once the moving party files a properly supported

Motion, the burden shifts to the nonmoving party to demonstrate the existence of a

genuine dispute.  In sustaining that burden, "an adverse party may not rest upon the

mere allegations or denials of the adverse party's pleading, but the adverse party's

response, by affidavit or as otherwise provided in this Rule, must set forth specific

facts showing that there is a genuine issue for trial."  Rule 56(e), Federal Rules of Civil

Procedure; see also, <u>Anderson v. Liberty Lobby, Inc.</u>, supra at 256; <u>Eddings v. City of Hot Springs, Ark.</u>, 323 F.3d 596, 602 (8th Cir. 2003).

Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, supra at 322; see also, <u>Forest Park II v. Hadley</u>, 408 F.3d 1052, 1057 (8th Cir. 2005); <u>Mercer v. City of Cedar Rapids</u>, 308 F.3d 840, 843 (8th Cir. 2002); <u>Hammond v. Northland Counseling Center</u>, Inc., 218 F.3d 886, 891 (8th Cir. 2000).  No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>Celotex Corp. v. Catrett</u>, supra at 323; see also, <u>Sallis v. University of Minnesota</u>, 408 F.3d 470, 474 (8th Cir. 2005); <u>Davis v. U.S. Bancorp</u>, 383 F.3d 761, 768 (8th Cir. 2004); <u>Bell Lumber and Pole Co. v. United States Fire Ins. Co.</u>, 60 F.3d 437, 441 (8th Cir. 1995).

B.   <u>Legal Analysis</u>.

1.   <u>Breach of Duty to Defend</u>.  State law governs the interpretation of insurance policies in cases where Federal jurisdiction is premised upon diversity of citizenship.  See, <u>J.E. Jones Constr. Co. v. Chubb & Sons, Inc.</u>, 486 F.3d 337, 340-

41 (8th Cir. 2007), citing <u>Langley v. Allstate Ins. Co.</u>, 995 F.2d 841, 844 (8th Cir. 1993); <u>Walnut Grove Partners, L.P. v. Amer. Family Mut. Ins. Co.</u>, 479 F.3d 949, 952 (8th Cir. 2007), citing <u>National Union Fire Insur. Co. of Pittsburgh v. Terra Indus., Inc.</u>, 346 F.3d 1160, 1164 (8th Cir. 2003).  Under Minnesota law, an insurer's duty to defend arises out of the contractual nature of its relationship to the insured, and is triggered when the insurer receives a "tender of defense."  See, <u>Home Ins. Co. v. National Union Fire Ins. of Pittsburgh</u>, 658 N.W.2d 522, 531 (Minn. 2003); see also, <u>Westfield Ins. Co. v. Kroiss</u>, 694 N.W.2d 102, 107-08 (Minn. App. 2005); <u>General Cas. Co. of Ill. v. Four Seasons Greetings</u>, 2004 WL 2987796 at *10 (Minn. App., December 28, 2004).

The Minnesota Supreme Court has held that a "tender of defense" does not require an insured specifically to request a defense, but only that an insured give his insurance company notice of the lawsuit, and an opportunity to defend.  See, <u>Home Ins. Co. v. National Union Fire Ins. of Pittsburgh</u>, supra at 532-33.  The obligation is then on the insurer to contact the insured, in order to see whether a defense is requested.  <u>Id.</u> at 533.  Since a tender of defense necessarily involves the relationship between the insured, and the insurer, notice of a lawsuit from a party other than the

- 9 -

insured does not constitute a tender of defense.[3]  See, <u>General Cas. Co. of Ill. v. Four Seasons Greetings</u>, supra at *10, citing <u>SCSC Corp. v. Allied Mut. Ins. Co.</u>, 536 N.W.2d 305, 316-17 (Minn. 1995)(holding, in the context of a State-agency action that, although the insurer's duty to defend arose when the agency issued a request for information to the insured, the duty was not invoked by the insured until it tendered a defense to the insurer); see also, <u>Hooper v. Zurich American Ins. Co.</u>, 552 N.W.2d 31, 35 (Minn. App. 1996)(discussing notice requirement).

The parties vigorously disagree over whether the Plaintiff actually sent any letters to Allstate, that would have provided the insurer with notice of the lawsuit.[4]  Even though the Plaintiff was not a party to the insurance contract between Allstate, and the

---

[3]In <u>State Farm Mutual Automobile Insurance Co. v. Cincinnati Insurance Co.</u>, 666 N.W.2d 334 (Minn. 2003), the Minnesota Supreme Court carved out a narrow exception to the rule, that a tender must be made by an insured to give rise to a duty to defend, and held that, when two insurance companies are parties to an intercompany arbitration agreement, under the Minnesota No-Fault Automobile Insurance Act, an insurer has a duty to arbitrate even  if no tender of defense had been made.  In this case, however, the Plaintiff brought suit, personally, against the Insureds, and therefore, this exception to the tender of defense rule does not apply.

[4]Specifically, Allstate alleges, and the Plaintiff strongly denies, that the notice letters, which are included in the Record, are forgeries that were generated, for the purposes of litigation, by the Plaintiff's attorney.  See, e.g., <u>Defendant's Memorandum in Support</u>, <u>Docket No. 44</u>, pp. 7-12; <u>Plaintiff's Memorandum in Opposition</u>, <u>Docket No. 65</u>, pp. 19-23.  The question of a possible fraud upon the Court is addressed below, in our discussion of the Plaintiff's collateral estoppel argument.

Insureds, and would not have standing, absent some other showing, to invoke Allstate's duty to defend, here, it is conceded that the Plaintiff was assigned the Insureds' legal rights, and there is evidence, though contested, that the Insureds contacted an agent of Allstate to inform of the receipt of a Summons and Complaint. Accordingly, we find that the parties have raised a fact question on that issue.

The parties do not dispute that the Insureds contacted Allstate within three (3) days after the accident on March 11, 2001, and that Allstate made benefit payments, for chiropractic treatments, that were provided to Guitterrez until November of 2001. Allstate argues that its business records reflect that, after it denied American Family's request for subrogation on April 12, 2002, see, <u>Affidavit of Rodlund</u>, supra at Exhibit C, page 86, it did not hear anything further about the case, until January 26, 2004, when American Family contacted Allstate and informed  it of the result of the State arbitration proceedings.  <u>Id.</u> at pp. 87-90.  Allstate's records, from the relevant time period, include the notation that "we have never been put on notice of the service of a summons and complaint by [Manzanarez] or [Guitterrez]," <u>id.</u> at p. 89, and Allstate has submitted business records that do not contain any evidence of a call from the Insureds tendering a defense, see, <u>Docket Nos. 45-3 and 45-4,</u> which is supported by an Affidavit of a Senior Claims Representative at Allstate, who attests that she is

familiar with the computer system employed by Allstate agents, and that agents cannot delete computer records after they have been made.  See, <u>Affidavit of Diane Stroot, Docket No. 73</u>.

The Plaintiff argues that the Insureds did contact Allstate several times, prior to the entry of a Judgment against them, and has submitted deposition transcripts of the Insureds, that suggest that they contacted Allstate after they received the initial Summons and Complaint, and again, after they received the Order to Show Cause. See, e.g., <u>Deposition of Guitterrez</u>, <u>Docket No. 66-3</u>, at pp. 16-17; <u>Deposition of Manzanarez</u>, <u>Docket No. 66-5</u>, at p. 30.  In Manzanarez's deposition, she testified that one (1) week after she was served with the Summons and Complaint, by the Sheriff, she took the Complaint to "Charles," her Allstate agent, and that Charles made a telephone call after reading the Complaint.  See, <u>Deposition of Manzanarez</u>, <u>Docket No. 66-4</u>, at pages 10-12.  Manzanarez further attested that three (3) days after she met with Charles, she followed his instructions, and had Guitterrez call the Allstate claims office.  <u>Id.</u> at pages 13-14.

In addition, the Plaintiff submitted the deposition of Claudia Ek ("Ek"), who stated that she went to the Allstate office, with the Insureds, with a copy of the Order to Show Cause, within ten (10) days after it was served on the Insureds, in August of

2004, and that the Allstate employee, who was working in the office, gave the Insureds a telephone number to call.  See, <u>Deposition of Claudia Ek</u>, <u>Docket No. 66-6</u>, at pages 5-7.  Ek testified that she called that number on behalf of the Insureds, while they were still in the parking lot at the Allstate office, and that she spoke with an Allstate agent named Diane, who told her that "nobody knows what's going on in [the Insureds'] case," and assured Ek that she would call Ek back with more information.  <u>Id.</u> at pages 8-9.  Ek claims that she continued to call Diane for the following two (2) weeks, making a total of six (6) calls, and leaving Diane at least one (1) voice mail message, in which she mentioned that the Insureds had contacted an attorney.  <u>Id.</u> at pages 13-14.  Ek testified that, after she left that voicemail, she received a telephone call from Diane, who told Ek that the Insureds' attorney was Brian Wood ("Wood").  <u>Id.</u> at pages 14-15.  According to Ek, she attempted to contact Wood twice and, around September 22, 2004, her call was returned from "Roseanne" in Wood's office.  <u>Id.</u> at pages 15-16.  Ek told Roseanne that the Insureds had a Court date, but Roseanne expressed uncertainty as to whether the Insureds had given Allstate notice of the Complaint, and had assumed their representation.  <u>Id.</u> at pages 18-22.

Allstate argues that, even if we find that the parties have created a genuine dispute of material fact as to whether the Insureds contacted Allstate, so as to give it

notice of the lawsuit, we should still grant its Motion for Summary Judgment on the breach of its duty to defend, as the Plaintiff has suffered no damages that she can recover.  Allstate claims that the only remedy, in Minnesota, for a breach of the duty to defend, is an award to the insured of the cost of defending herself, and here, it is undisputed that the Insureds did not defend themselves, and so incurred no costs.  Thus, Allstate argues that the Plaintiff's claim for breach of duty to defend fails, as a matter of law, to state a claim on which relief can be granted.  In opposition, the Plaintiff argues that this is a case of first impression in Minnesota, and that she is entitled to an award of damages, over and above the applicable policy limits, based upon her claims.

Our Court of Appeals has noted that "it is generally held that where the only wrongful act of the insurer is the refusal to defend, the liability of the insurer is ordinarily confined to the limits of the policy."  Luke v. American Family Mut. Ins. Co., 476 F.2d 1015, 1020 n. 7 (8th Cir. 1973)(applying South Dakota law, but discussing general principles), cert. denied, 414 U.S. 856 (1973), citing among other cases, Mannheimer Bros. v. Kansas Cas. & Surety Co., 184 N.W. 189 (Minn. 1921); Chicago Title Ins. Co. v. F.D.I.C., 172 F.3d 601, 606 (8th Cir. 1999)(applying Minnesota law)("When a breach of the duty to defend occurs, the insured 'is entitled

to be reimbursed for attorney's fees and costs expended' to force the insurer to pay for the defense."), citing Indep. Sch. Dist. No. 697 v. St. Paul Fire & Marine Ins. Co., 515 N.W.2d 576, 581 (Minn. 1994).  Our Court of Appeals has further noted that, in general, "liability for excess damages does not follow from the failure to defend when there has been no offer to settle within the policy limits."  Luke v. American Family Mut. Ins. Co., supra at 1020 n. 7.

The parties focus their discussion of this issue on the controlling Minnesota case of Engeldinger v. State Auto. & Cas. Underwriters, 236 N.W.2d 596 (Minn. 1975).  In Engeldinger, an insurance company denied coverage, and refused to defend an insured who was accused of wrongful death.  Id.  Although the main issue that was decided by the Minnesota Supreme Court was whether that wrongful death fell within the exclusionary policy of the contested insurance policy, id. at 598, and whether the insurance company had a duty to defend, based upon the language of the policy, id. at 600, the Court also examined the liability of the insurance company to pay the amount of the Judgment against the insured, that was in excess of the policy limit.  Id. at 601.  The Engeldinger Court reaffirmed its earlier holding, from 1921, in Mannheimer Brothers v. Kansas Casualty & Surety Company, supra, and found that, as the denial of coverage was based on the insurance company's reliance upon the

- 15 -

exclusionary clause, it was not appropriate to impose the full cost of the settlement on the insurer.  Id. at 602.

Of particular relevance to this case, the Engeldinger Court noted, in closing, that "there exist situations where the insurer must bear the entire financial settlement, even in excess of policy limits, when it fails to defend," but found that such a burden was not applicable to the facts before it, where the only offer to settle, within the policy limits, had taken place after the Trial Court had issued a Judgment against the insured.  Id. The parties contest the meaning of the Engeldinger Court's ruling, but we conclude that it implicates an insurer's breach of the duty to consider a settlement in good faith, rather than suggesting a more general liability for excess Judgments.  As support for that contention, in the same passage, in which the Engeldinger Court discusses the possibility of an insurer's liability for something more than fees and costs, the Court considered, but declined to follow, a California Supreme Court decision which held that an insurer, who was found to have wrongfully denied coverage, and who failed to consider a settlement claim that would have been less than the policy amount, should be liable for a Judgment in excess of the policy amount.  See, Comunale v. Traders & Gen. Ins. Co., 328 P.2d 198, 201 (Cal. 1958); see also,

Anguiano v. Allstate Ins. Co., 209 F.3d 1167, 1169 (9th Cir. 2000)(applying reasoning of Comunale decision).

For the purposes of the parties' cross-Motions for Summary Judgment, we find that Engeldinger stands for the legal principle that a Court, which applies Minnesota law, can only enforce a Judgment, which is in excess of an insurance policy, against an insured when the insurer failed to consider a settlement in good faith. Of course, the Plaintiff disagrees, and urges us to accept the "well reasoned dissenting opinion" in Engeldinger. See, Plaintiff's Memorandum in Opposition, Docket No. 65, at p. 11. However, "[i]n interpreting state law, we are bound by the decisions of the state's highest court," Allstate Ins. Co. v. Blount, 491 F.3d 903, 908 (8th Cir. 2007), citing Minn. Supply Co. v. Raymond Corp., 472 F.3d 524, 534 (8th Cir. 2006), and not a minority view of what the law should be. Since we find Engeldinger, and Mannheimer, to be applicable, and not meaningfully distinguishable, we conclude that the Plaintiff is not entitled to collect damages, over the policy limits, as to the alleged failure of Allstate to defend the Insureds and, since the parties concede that Allstate paid the policy's limits, plus interest and costs, we recommend that Allstate's Motion for Summary Judgment be granted as to the Plaintiff's claim for a Breach of the Duty to Defend.

   2. <u>Breach of Duty of Good Faith in Failure to Consider Settlement</u> <u>Offer, and Breach of Fiduciary Duty</u>.  In her Complaint, the Plaintiff also alleged that Allstate breached its duty to act in good faith by failing to defend or settle the Plaintiff's claim against the Insureds, see, <u>Complaint</u>, supra at p. 7, ¶XVI, and in her briefing to the Court, the Plaintiff expanded that theory to suggest that Allstate additionally breached its fiduciary duty to act in the best interest of the Insureds, after receiving notice of the lawsuit.

   a. <u>Breach of Duty of Good Faith to Consider Settlement Offer</u>. Under Minnesota law, "a liability insurer, after taking control of settlement decisions for claims against its insured, may become liable in excess of its undertaking, under the terms of the policy, if it fails to exercise 'good faith' in considering offers to settle the claim for an amount within the policy limits."  <u>Noe v. American Fam. Mut. Ins.</u>, 2002 WL 1634251 at *3 (D. Minn., July 17, 2002), citing <u>Short v. Dairyland Ins. Co.</u>, 334 N.W.2d 384, 387 (Minn. 1983), and <u>Iowa Nat'l Mut. Ins. Co. v. Auto-Owners</u> <u>Ins. Co.</u>, 371 N.W.2d 627, 628 (Minn. App. 1985).  An insurer may breach its duty of good faith if the insured is "clearly liable, the insurer refuses to settle within the policy limits, and the decision not to settle within the policy limits is made in bad faith

and is not based on reasonable grounds to believe that the amount demanded is excessive." <u>Noe v. American Fam. Mut. Ins.</u>, supra at *3.

In order to find that an insurer acted in bad faith, the insured must show that he made a demand of his insurance company to accept an offer within the policy limits, and that the insurance company's refusal to accept the offer was arbitrary. <u>Id.</u> at *4; see also, <u>Northfield Ins. Co. v. St. Paul Surplus Lines Ins. Co.</u>, 545 N.W.2d 57, 60 (Minn. App. 1996). "A mere mistake in judgment by the insurer is not sufficient" to succeed on this theory, as the plaintiff must show actual bad faith on the part of the insurance company. <u>Northfield Ins. Co. v. St. Paul Surplus Lines Ins. Co.</u>, supra. This is a stringent standard, and the Court, in <u>Noe v. American Family Mutual Insurance</u>, supra, awarded Summary Judgment to an insurer based on a lack of evidence on which a Jury could find bad faith regarding settlement decisions. See also, <u>Casteel v. Liberty Mut. Ins. Co.</u>, 1995 WL 311447 at *1 (Minn. App., May 23, 1995)(granting Summary Judgment when no settlement offer had been made to the insurer).

Although the Plaintiff alleged in her Complaint, that Allstate breached its duty to settle the claim against the Insureds within the limits of the Policy, at the Hearing and in her briefing to the Court, she conceded that Allstate never undertook settlement

- 19 -

negotiations. Furthermore, while the parties claim there is a factual dispute over whether a settlement offer was actually made to Allstate, with the Plaintiff alleging that an offer was made by telephone, <u>Plaintiff's Memorandum in Opposition</u>, supra at p. 14, and Allstate denying that any evidence has been introduced in the Record that would give rise to a fact question on this issue, see, <u>Allstate's Memorandum in Support</u>, supra at p. 18, the Plaintiff has pointed to an averment, by her counsel, "[t]hat prior to serving and filing the lawsuit against the Assignors, I demanded that Allstate pay over the limits of its policy in exchange for a full release of Plaintiff's claims against the Assignors." <u>Affidavit of Gary L. Manka, Docket No. 66</u>, at p. 4 ¶19.

The question then becomes whether this averment constitutes a submissible issue of fact for the Jury, that would stave Summary Judgment. Notably, the averment contains no details, such as the date of the demand, or to whom the demand was made. Likewise, the Plaintiff offers no documentation of the demand, such as a writing that substantiates its occurrence; routinely, a plaintiff would transmit a "demand letter" to detail the insistence on policy limits, as well as the bases therefore. Indeed, on this Record, we do not even know whether the demand was submitted to any person who had settlement authority on behalf of Allstate. While we seriously doubt

- 20 -

that the Plaintiff has submitted anything other than a conclusory assertion, unsupported by corroborative facts, even if we concluded that the submission were sufficient, the Plaintiff's "bad faith" claim fails on other grounds.

Here, the Plaintiff has failed to submit any evidence that Allstate had a contractual obligation to accept a demand when the critical, underlying liability question, was -- and continues to be -- hotly contested. Allstate represents, and the Plaintiff does not dispute, that the Insureds claim no fault in the accident the precipitated this case, nor is there so much as a hint that the Plaintiff has an expert opinion that would weigh on the Jury's resolution of that issue. While we understand the Plaintiff to argue that no such expertise is needed here, she rests that argument on the same dissenting opinion in Engeldinger, which we find unauthoritative. The simple fact is that if, as the Plaintiff now suggests, the State Court rulings foreclosed any defense to her "bad faith" claim, then the claim should have been resolved in the State Court proceeding, and it was not. Given this state of the Record, essential elements of the Plaintiff's "bad faith" claim are missing, and the Plaintiff bears the burden of proof on that question, and therefore, we recommend that Allstate's Motion for Summary Judgment on that claim be granted. See, Shaffer v. Potter, --- F.3d ---, 2007

WL 2376770 at *2 (8th Cir., August 22, 2007), citing Fair v. Norris, 480 F.3d 865, 869 (8th Cir. 2007).

        b.     Breach of Fiduciary Duty.  An "insurer owes a fiduciary duty to the insured to represent his or her best interests and to defend and indemnify." Kissoondath v. U.S. Fire Ins. Co., 620 N.W.2d 909, 914 (Minn.App. 2001). However, as the Minnesota Court of Appeals has recently held, that a breach of a fiduciary duty claim is a cause of action separate from that of the duty to defend and breach of the duty to indemnify.  See, Seren Innovations, Inc. v. Transcontinental Ins. Co., 2006 WL 1390262 at *7-8 (Minn.App., May 23, 2006), rev. denied (Minn., August 15, 2006).  Although we recognize that, as an unpublished decision, Seren Innovations is not precedential, but we find the reasoning of that case persuasive as to what the Minnesota Supreme Court would rule on the same issue, in part, because the Supreme Court denied further review.

    As the Court also observed, in Seren Innovations, "Minnesota law does not recognize a separate cause of action for breach of the implied covenant of good faith when it arises from the same conduct as a breach-of-contract claim."  Id. at *8, citing Wild v. Rarig, 234 N.W.2d 775, 790 (Minn. 1975); see also, Bores v. Domino's Pizza LLC, 489 F. Supp. 2d 940, 950 (D. Minn. 2007); Aten v. Scottsdale Ins. Co., 2006

WL 2990476 at *4 (D. Minn., October 19, 2006).  Here, the Plaintiff relies on the same set of alleged facts to support her breach of a duty to defend claim, as she employs to support a supposed breach of a fiduciary duty to defend, and she offers no authority to suggest, let alone establish, that Minnesota law recognizes a separate cause of action, based on the same alleged facts, for a breach of fiduciary duty to defend claim, and indeed, as we have shown, Minnesota law is to the contrary.  Moreover, the Plaintiff offers no authority, or rationale for treating a breach of fiduciary duty to defend claim differently than Minnesota Courts treat a breach of an implied covenant of good faith, and fair dealing claim, when alleged in conjunction, and on the same facts, as a breach of contract claim.   Accordingly, we recommend that Allstate's Motion for Summary Judgment should be granted on this claim, as well.

　　　　3.　　Collateral Estoppel Effect of the State Court Decision.   In her Motion for Summary Judgment, the Plaintiff argues that the preceding analysis of Allstate's Motion for Summary Judgment is irrelevant, as the findings of fact, in the State Court Judgment against Allstate, are controlling, and require the Court to grant Summary Judgment in her favor.  See, Plaintiff's Memorandum in Support, Docket No. 53, at p. 11.

- 23 -

Collateral estoppel precludes the relitigation of an issue that was previously decided by another Court as a final Judgment.  See, <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980); <u>W.F.M., Inc. v. Cherry County</u>, 279 F.3d 640, 643 (8th Cir. 2002); <u>Schumacher v. Halverson</u>, 467 F. Supp. 2d 939, 945-46 (D. Minn. 2006).   For collateral estoppel to apply, each of the following elements must be satisfied:

> (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

<u>Ill. Farmers Ins. Co. v. Reed</u>, 662 N.W.2d 529, 531 (Minn. 2003); <u>A & H Vending Co. v. Comm'r of Revenue</u>, 608 N.W.2d 544, 547 (Minn. 2000).

"Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."  <u>Allen v. McCurry</u>, supra at 96, citing <u>Title 28 U.S.C. §1738</u>; see also, <u>United States v. B.H.</u>, 456 F.3d 813, 816 (8th Cir. 2006); <u>In re Scarborough</u>, 171 F.3d 638, 641 (8th Cir. 1999), cert. denied, 528 U.S. 931 (1999), citing <u>Baker Elec. Coop. Inc. v. Chaske</u>, 28 F.3d 1466, 1475 (8th Cir. 1994).

However, collateral estoppel does not apply when the issue the moving party seeks to have precluded is not identical to the issue previously decided.  See, <u>Velde v. Reinhardt</u>, 366 B.R. 894, 899 n. 9 (D. Minn. 2007), citing <u>Canady v. Allstate Ins.</u>

- 24 -

<u>Co.</u>, 282 F.3d 1005, 1016 (8th Cir. 2002).  In deciding whether to apply the doctrine, Courts will consider whether an injustice will be done to the party against whom collateral estoppel is urged.   See, <u>Schumacher v. Halverson</u>, supra at 946, citing <u>Johnson v. Consol. Freightways, Inc.</u>, 420 N.W.2d 608, 613-14 (Minn. 1988); <u>Nelson v. Amer. Fam. Ins. Group</u>, 651 N.W.2d 499, 511 (Minn. 2002).

In determining the scope of preclusion, that a prior State Court Judgment will exact, we necessarily look to the governing law of Minnesota.  See, <u>Marrese v. American Academy of Orthopaedic Surgeons</u>, 470 U.S. 373, 375 (1985)(a Federal Court must first consider the law of the State in which a Judgment was rendered when determining the preclusive effect to be accorded that Judgment), reh'g denied, 471 U.S. 1062 (1985).  "Under Minnesota law," which all concede is applicable here,  "'[a] judgment on the merits constitutes an absolute bar to a second suit for the same cause of action, and is conclusive between parties and their privies * * *.'"  <u>U.S. West Financial Services, Inc. v. Buhler, Inc.</u>, 150 F.3d 929, 932 (8th Cir. 1998), quoting <u>Dorso Trailer Sales, Inc. v. American Body & Trailer</u>, 482 N.W.2d 771, 774 (Minn. 1992), quoting in turn, <u>Mattsen v. Packman</u>, 358 N.W.2d 48, 49 (Minn. 1984).  A Summary Judgment constitutes a final determination on the merits.  See, <u>In re Estate of Bush</u>, 224 N.W.2d 489, 503 (Minn. 1974); <u>DLH Inc. v. Russ</u>, 566 N.W.2d 60, 69

(Minn. 1997); Dollar Travel Agency, Inc. v. Northwest Airlines, Inc., 354 N.W.2d 880, 882 (Minn. App. 1984).

Here, the Plaintiff claims that Allstate is barred from re-litigating its liability for breach of duty to defend, breach of duty to consider a settlement in good faith, and breach of fiduciary duty, because of a prior State Court Judgment. The parties agree that Allstate was a party to the State Court decision that granted Summary Judgment to the Plaintiffs, but disagree as to whether the issue decided by the State Court was identical to that in controversy here. Specifically, Allstate notes that the State Court's decision relied upon Minnesota Statutes Section 65B.49, Subdivision 3(3)(a), which provides that liability coverage becomes absolute at the time that injury or damage occurs, see, Affidavit of Manka, supra at Exhibit F, and that Statute has nothing to do with the duty of an insurer to defend a claim, prior to receiving notice from its insureds.[5] The Plaintiff counters that the State Court relied on its findings of fact, that

_____

[5]Minnesota Statutes Section 65B.49, Subdivision 3(3)(a) provides as follows:

> The liability of the reparation obligor with respect to residual liability coverage required by this clause shall become absolute whenever injury or damage occurs; such liability may not be canceled or annulled by any agreement between the reparation obligor and the insured after the
>
> (continued...)

Allstate had notice of the litigation against the Insureds, and failed to respond, which should serve as a final Judgment on that issue and estop our further consideration of the matter.

We find that collateral estoppel is not appropriate here.   In its Order granting Summary Judgment, the State Court found that Allstate had been sent copies of the Summons, Complaint, Interrogatories, and Request for Production of Documents and Statements, and that the Plaintiff's counsel had sent Allstate notice of the initial Hearing.   Id. at p. 1, ¶¶4-6.   The State Court observed that "[c]ollateral estoppel applies to cases if the insured gives notice of the pendancy of an action and the opportunity to defend on its behalf."   Id. at p. 2, citing Senger v. Minn. Lawyers Mut. Ins. Co., 415 N.W.2d 364, 368 (Minn. App. 1987).   However, the State Court decision fails to include any findings of fact that address the key issues that govern our analysis of the Plaintiff's causes of action in this case.

---

[5](...continued)

occurrence of the injury or damage; no statement made by the insured or on the insured's behalf and no violation of said policy shall defeat or void said policy.

The Plaintiff does not argue that the State Court found that the Insureds gave proper notice, but only claims that Allstate is estopped from disputing the following facts: "the [Insureds] became potentially liable for Plaintiff's damages; Allstate insured the [Insureds]; Allstate was aware of a lawsuit against the [Insureds]; and Allstate failed to defend and thereafter indemnify [the Insureds]." See, Plaintiff's Memorandum in Support, supra at p. 14. However, those facts are insufficient to establish that Allstate had a duty to defend the Insureds, so as to allow a recovery of extra-contractual damages, over and above the policy limits. Nor does the State Court decision bind, our analysis of the Plaintiff's breach of fiduciary claims, or her claims of "bad faith." Accordingly, we find that collateral estoppel does not apply, and we recommend that the Plaintiff's Motion for Summary Judgment be denied.[6]

------

[6]Finally, we note that the parties heatedly dispute the validity of the transmittal letters, that were submitted by the Plaintiff to the State Court, in support of her claim that the Plaintiff gave notice of the pending lawsuit to Allstate. A Judgment obtained by fraud may not be used as a basis for the application of collateral estoppel, see, State v. DeSchepper, 231 N.W.2d 294, 299 (Minn. 1975), and "[f]raud upon the court" exists when "a court is misled as to material circumstances, or its process is abused, resulting in the rendition of a judgment which would not have been given if the whole conduct of the case had been fair," and where the misrepresentations are material and intentional. In re C.M.A., 557 N.W.2d 353, 358 (Minn. App. 1996), citing Halloran v. Blue & White Liberty Cab Co., supra at 798, and Maranda v. Maranda, 449 N.W.2d 158, 165 (Minn. 1989). We need not enter that murky issue, here,

(continued...)

NOW, THEREFORE, It is --

RECOMMENDED:

1.      That the Defendant Allstate Insurance Company's Motion for Summary

Judgment [Docket No. 42] be granted.

2.      That the Plaintiff Veronica Ortega-Maldonado's Motion for Summary

Judgment [Docket No. 52] be denied.


Dated:  August 24, 2007                    s/Raymond L. Erickson
                                           Raymond L. Erickson
                                           CHIEF U.S. MAGISTRATE JUDGE


**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and

D. Minn. LR72.2(b), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties **by no later than**

**September 11, 2007**, a writing which specifically identifies those portions of the

---

[6](...continued)
however, as we find that collateral estoppel is not appropriate to the claims the Plaintiff
advances here, and our analysis has generally assumed that notice was sent, or was
immaterial to the legal issues we have analyzed.  Therefore, we do not further address
the question of any fraud upon this Court, or the Minnesota Courts.

- 29 -

Report to which objections are made and the bases of those objections.   Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing by no later than **September 11, 2007**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.